IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-83

 No. 242A20-1

 Filed 13 August 2021

 NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.

 v.
 JUDY LUNSFORD

 Appeal from the opinion of a divided Court of Appeals panel, 271 N.C. App. 234

 (2020), affirming entry of Order and Declaratory Judgment in favor of the plaintiff

 on 3 February 2019 by Judge Michael D. Duncan in Superior Court, Guilford County.

 Heard in the North Carolina Supreme Court on 17 May 2021.

 William F. Lipscomb for the Plaintiff-Appellee.

 Burton Law Firm, PLLC, by Jason M. Burton, for the Defendant-Appellant.

 Jon. R. Moore and C. Douglas Maynard, Jr., for North Carolina Advocates for
 Justice, amicus curiae.

 Bailey & Dixon, LLP, by J.T. Crook, for North Carolina Association of Defense
 Attorneys, amicus curiae

 EARLS, Justice.

¶1 Cars and people are, naturally, mobile. They regularly traverse state lines.

 Unfortunately, but inevitably, cars and people also get into accidents. When they do,

 it can raise issues regarding which state’s law governs the interpretation of various

 provisions of each of the involved parties’ insurance contracts. In this case, we must
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 determine whether a North Carolina resident is entitled to collect underinsured

 motor vehicle coverage benefits from her North Carolina insurer, after she was

 injured while traveling in Alabama in a car owned and operated by a Tennessee

 resident and insured by a Tennessee insurer. To answer that question, we must

 decide if North Carolina or Tennessee law applies when ascertaining whether the

 Tennessee vehicle is “underinsured” within the meaning of a contract executed in

 North Carolina between a North Carolina resident and a North Carolina insurer.

¶2 Judy Lunsford, a North Carolina resident, was a passenger in her sister

 Levonda Chapman’s vehicle when a serious accident occurred as they were travelling

 through Alabama. Chapman negligently drove her vehicle across a highway median

 into oncoming traffic, where it collided with an 18-wheeler. As a result of the accident,

 Lunsford was severely injured. Chapman was tragically killed.

¶3 Chapman was insured by a Nationwide Insurance Company policy purchased

 in her home state of Tennessee. As a passenger in Chapman’s vehicle, Lunsford was

 entitled to recover from Nationwide, under the terms of Chapman’s bodily injury

 liability coverage. Nationwide offered—and Lunsford accepted—the full $50,000

 available under the policy’s per person bodily injury coverage limit. Lunsford also

 claimed she was entitled to coverage under the underinsured motorist (UIM)

 provision of her own insurance contract executed in North Carolina with a different

 insurer, North Carolina Farm Bureau Mutual Insurance Company, Inc. (NC Farm
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 Bureau). NC Farm Bureau denied her claim and initiated a declaratory judgment

 action to establish its liability to Lunsford. The trial court agreed with NC Farm

 Bureau’s position, concluding that Chapman’s vehicle was not an “underinsured

 highway vehicle” as defined under North Carolina’s Financial Responsibility Act

 (FRA). A divided panel of the Court of Appeals affirmed.

¶4 In its argument before this Court, NC Farm Bureau concedes that the majority

 below “employed incorrect reasoning” in reaching its conclusion that Lunsford was

 not entitled to coverage under the UIM provision of her insurance contract. Still, NC

 Farm Bureau argues the Court of Appeals “reached the correct result” in affirming

 the trial court’s entry of declaratory judgment for NC Farm Bureau, contending that

 Chapman’s vehicle is not an underinsured motor vehicle as defined by the terms of

 Chapman’s Nationwide insurance contract, which incorporates Tennessee law.

¶5 However, in determining whether Lunsford is entitled to collect pursuant to

 the contract she entered into with NC Farm Bureau, we must apply North Carolina

 law to interpret the terms of a contract executed in North Carolina that necessarily

 incorporates North Carolina’s FRA. We need not interpret Chapman’s Nationwide

 insurance contract incorporating Tennessee law. Resolving this dispute does not

 require us to adjudicate any of Chapman’s or Nationwide’s rights, nor does it

 implicate any other state’s interest in enforcing its own laws regulating the provision

 and maintenance of motor vehicle insurance.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

¶6 Applying North Carolina law, we affirm prior decisions of the Court of Appeals

 allowing interpolicy stacking when calculating the “applicable” policy limits as

 required under the relevant provision of the FRA, N.C.G.S. § 20-279.21(b)(4) (2019).

 Because the amount of the stacked UIM coverage limits exceeds the sum of the

 applicable bodily injury coverage limits, Chapman’s car is an “underinsured motor

 vehicle” as defined by the FRA for the purposes of giving effect to Lunsford’s contract

 with NC Farm Bureau. Accordingly, we reverse the decision of the Court of Appeals,

 vacate the trial court’s order entering declaratory judgment for NC Farm Bureau,

 and remand to the trial court for further proceedings consistent with this opinion.

 I. Factual Background

¶7 At the time of the crash, both Lunsford and Chapman maintained motor

 vehicle accident insurance policies. Chapman’s Nationwide policy provided her and

 her vehicle with bodily injury liability coverage subject to limits of $50,000 per person

 and $100,000 per accident, and UIM coverage subject to the same limits. Lunsford’s

 NC Farm Bureau policy provided her with UIM coverage subject to the same limits

 as Chapman’s bodily injury liability coverage ($50,000 per person / $100,000 per

 accident). After the crash, Nationwide offered, and Lunsford accepted, the full

 $50,000 available under the Nationwide bodily injury liability policy per person limit.

 Lunsford then sought an additional $50,000 in UIM coverage from her own insurer,

 NC Farm Bureau.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

¶8 NC Farm Bureau denied Lunsford’s claim and initiated a declaratory

 judgment action in Superior Court, Guilford County seeking a ruling establishing

 that “the UIM coverage of [the NC Farm Bureau policy] does not apply to [Lunsford’s]

 injuries from the . . . motor vehicle collision in question and that [Lunsford] is not

 entitled to recover any UIM coverage from said policy.” NC Farm Bureau contended

 that Chapman’s vehicle was not an “underinsured motor vehicle” under North

 Carolina law. Lunsford argued in response that, under the relevant provision of the

 FRA as interpreted by the Court of Appeals in Benton v. Hanford, 195 N.C. App. 88

 (2009), she was entitled to stack her NC Farm Bureau UIM coverage limit ($50,000)

 with the Nationwide UIM coverage limit ($50,000) for the purposes of determining

 whether “the applicable limits of underinsured motorist coverage for the vehicle

 involved in the accident and insured under the owner's policy” exceeded “the sum of

 the limits of liability under all bodily injury liability bonds and insurance policies

 applicable at the time of the accident.” Id. at 92 (quoting N.C.G.S. § 20-279.21(b)(4)).

 After stacking the policies, Lunsford contended she would be entitled to recover UIM

 benefits from NC Farm Bureau because the stacked UIM limits ($100,000) would be

 greater than Nationwide’s bodily injury liability coverage limit ($50,000).

¶9 On 19 December 2018, the trial court entered judgment on the pleadings in NC

 Farm Bureau’s favor. The trial court reasoned that because the Nationwide insurance

 contract was executed in Tennessee, “Chapman’s policy is governed by Tennessee
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 law.” Under Tennessee law, an “uninsured1 motor vehicle does not include a motor

 vehicle . . . [i]nsured under the liability coverage of the same policy of which the

 uninsured motor vehicle coverage is a part.” Tenn. Code § 56-7-1201(2) (2016).

 Because Chapman’s vehicle was “insured under the liability coverage of the same

 policy from which the claimant [Lunsford] is seeking UIM coverage,” the trial court

 concluded that Chapman’s vehicle “cannot be an underinsured motor vehicle under

 Chapman’s policy, the UIM coverage of Chapman’s policy does not apply to the

 accident in question and, therefore, it is not ‘applicable’ UIM coverage within the

 meaning of the North Carolina UIM statute’s definition of the ‘underinsured highway

 vehicle’ and [Benton].” Since the Nationwide UIM coverage was not “applicable,”

 there was no limit for Lunsford to stack with her own NC Farm Bureau UIM coverage

 limit. Defined thusly, “Chapman’s vehicle does not satisfy [the FRA’s definition of an

 underinsured motor vehicle] because the liability coverage of Chapman’s policy

 ($50,000 / $100,000) is equal to (not less than) the UIM coverage of Lunsford’s policy.”

¶ 10 A divided panel of the Court of Appeals affirmed, but on a different rationale

 than the one utilized by the trial court. The majority agreed with the trial court that

 Chapman’s Nationwide UIM policy was not “applicable at the time of an accident

 under [N.C.G.S.] § 20-279.21(b)(4).” North Carolina Farm Bureau Mut. Ins. Co., Inc.

 1 Chapman’s contract uses the term “uninsured motor vehicle” in a manner which

 encompasses what would be termed an “underinsured motor vehicle” under North Carolina
 law. We use the latter throughout for ease of reading.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 v. Lunsford, 271 N.C. App. 234, 238 (2020). However, the majority’s conclusion that

 the Nationwide policy was not “applicable” rested upon its belief that Lunsford did

 not “qualif[y] as a ‘person insured’ [under the Nationwide policy] as that term is

 defined by [N.C.G.S. § 20-279.21(b)(3)].” Id. According to the majority, because

 Lunsford was neither “the named insured [nor], while resident of the same household,

 the spouse of the named insured [or] relatives of either,” she did not “qualif[y] as a

 ‘person insured’ ” under Chapman’s Nationwide policy, precluding Lunsford from

 stacking the Nationwide UIM coverage limit. Id. at 237 (quoting Sproles v. Greene,

 329 N.C. 603, 608 (1991)).

¶ 11 Judge Murphy dissented based upon his interpretation of Chapman’s contract

 with Nationwide. According to Judge Murphy, Chapman’s Nationwide policy

 contained a “conformity clause” stating that the insurer would “adjust this policy to

 comply . . . [w]ith the financial responsibility law of any state or province which

 requires higher liability limits than those provided by this policy.” Id. at 242–43

 (Murphy, J., dissenting). Therefore, Judge Murphy read Chapman’s Nationwide

 policy as “explicitly incorporat[ing] our FRA,” requiring the court to apply the

 definition of an “underinsured motor vehicle” provided by N.C.G.S. § 20-279.21(b)(4).

 Id. at 242. Under this definition of an underinsured motor vehicle, as interpreted by

 the Court of Appeals in Benton, Lunsford was entitled to “stack the $50,000.00 limit

 of UIM coverage in Chapman's Nationwide policy with the $50,000.00 limit of UIM
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 coverage in Lunsford's [NC Farm Bureau] policy.” Id. at 245.

¶ 12 Judge Murphy also disputed the majority’s conclusion that Lunsford was not

 a “person[ ] insured” by Chapman’s Nationwide policy. He noted that in Sproles, this

 Court interpreted the relevant provision of the FRA, N.C.G.S. § 20-279.21(b)(3), to

 essentially establish[ ] two “classes” of “persons insured”:
 (1) the named insured and, while resident of the same
 household, the spouse of the named insured and relatives
 of either and (2) any person who uses with the consent,
 express or implied, of the named insured, the insured
 vehicle, and a guest in such vehicle.

 Id. at 244. Applying Sproles, Judge Murphy concluded that “Lunsford, as the named

 insured, is a class one insured with respect to the NCFB policy . . . . She is also a class

 two insured with respect to Chapman's Nationwide policy as a guest in the insured

 vehicle with consent of the named insured.” Id.

 II. Analysis

¶ 13 All insurers doing business in North Carolina are required to offer UIM

 coverage. See N.C.G.S § 20-279.21(b)(4) (stating that every insurer’s “policy of

 liability insurance . . . [s]hall . . . provide underinsured motorist coverage”). “The

 purpose of underinsured motorist (UIM) coverage in our state is to serve as a

 safeguard when tortfeasors’ liability policies do not provide sufficient recovery—that

 is, when the tortfeasors are ‘under insured.’ ” Lunsford v. Mills, 367 N.C. 618, 632

 (2014) (Newby, J., concurring in part, dissenting in part). UIM coverage kicks in when

 the insured is injured due to the tortious conduct of another driver. “Following an
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 automobile accident, a tortfeasor's liability coverage is called upon to compensate the

 injured plaintiff, who then turns to his own UIM coverage when the tortfeasor's

 liability coverage is exhausted.” Harris v. Nationwide Mut. Ins. Co., 332 N.C. 184,

 188 (1992) (emphasis added); see also Douglas R. Richmond, Issues and Problems in

 “Other Insurance,” Multiple Insurance, and Self-Insurance, 22 Pepp. L. Rev. 1373,

 1420 (1995) (“UIM policies provide first-party coverage” to insureds).

¶ 14 To determine whether Lunsford is entitled to access the UIM coverage she

 purchased from NC Farm Bureau, “[t]he threshold question . . . is whether the tort-

 feasor’s vehicle is an ‘underinsured highway vehicle’ as the term is used in N.C.G.S.

 § 20–279.21(b)(4).” Harris, 332 N.C. at 187. Under N.C.G.S. § 20–279.21(b)(4), a

 vehicle is an “underinsured highway vehicle” if

 the sum of the limits of liability under all bodily injury
 liability bonds and insurance policies applicable at the time
 of the accident is less than the applicable limits of
 underinsured motorist coverage for the vehicle involved in
 the accident and insured under the owner's policy.

¶ 15 Everyone agrees that the only bodily injury liability insurance policy

 “applicable at the time of the accident” is Lunsford’s Nationwide policy, and that

 Lunsford’s NC Farm Bureau UIM policy is an “applicable” UIM coverage limit. The

 crux of the parties’ dispute is whether Chapman’s Nationwide UIM coverage limit is

 also an “applicable limit of underinsured motorist coverage for the vehicle involved

 in the accident and insured under the owner’s policy.” Lunsford says it is. NC Farm
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 Bureau says it is not.

¶ 16 Because of each policy’s respective limits, the answer to this question is

 dispositive in this case. If the Nationwide UIM coverage limit is “applicable,” then—

 under Court of Appeals precedent which NC Farm Bureau does not challenge—

 Lunsford is entitled to stack the Nationwide UIM coverage limit ($50,000) with the

 NC Farm Bureau coverage limit ($50,000). Benton, 195 N.C. App. at 92 (“UIM

 coverage may be stacked interpolicy to calculate the applicable limits of underinsured

 motorist coverage for the vehicle involved in the accident for the purpose of

 determining if the tortfeasor's vehicle is an ‘underinsured highway vehicle.’ ”). If

 Lunsford is entitled to stack the Nationwide and NC Farm Bureau UIM coverage

 limits, “the sum of the limits of liability under all bodily injury liability bonds and

 insurance policies applicable at the time of the accident” (Nationwide’s $50,000 bodily

 injury coverage limit) would be “less than the applicable limits of underinsured

 motorist coverage for the vehicle involved in the accident and insured under the

 owner's policy” (the $100,000 in stacked UIM coverage limits), and Chapman’s vehicle

 would be “underinsured.” If the Nationwide UIM coverage limit is not “applicable,”

 then it cannot be stacked with Lunsford’s NC Farm Bureau coverage limit, the bodily

 injury liability coverage limit ($50,000) would be equal to the sum of the “applicable”

 UIM coverage limits ($50,000), and Chapman’s vehicle would not be “underinsured.”

¶ 17 Initially, we reject the distinction the majority below relied upon in arriving at
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 its conclusion that Chapman’s Nationwide coverage limit was not “applicable” within

 the meaning of N.C.GS. § 20-279.21(b)(4). As Judge Murphy’s dissent correctly

 explains, there are two “classes” of “persons insured” set forth in N.C.G.S. § 20-

 279.21(b)(3), “Class I” insureds (named insureds and relatives who reside in the

 insured’s household) and “Class II” insureds (individuals using a vehicle with the

 driver’s consent). Lunsford is plainly a “Class I” insured with regards to the NC Farm

 Bureau policy and a “Class II” insured with regards to the Nationwide policy.

 Therefore, the fact that Lunsford is not a relative who resides in Chapman’s

 household is irrelevant. NC Farm Bureau acknowledges as much—in their

 presentation to this Court, they concede that “it is undisputed that Lunsford was an

 insured of Chapman’s UIM coverage . . . because she was occupying Chapman’s

 vehicle and the [c]ourt’s opinion does not explain why her status as a Class II insured

 of the Chapman policy prevents that policy from being applicable within the meaning

 of N.C.GS. § 20-279.21(b)(4).”

¶ 18 Rather than defend the Court of Appeals’ reasoning—or ask this Court to

 overrule Benton and other cases recognizing the propriety of interpolicy stacking—

 NC Farm Bureau contends that interpolicy stacking is not permitted in this case

 because Chapman was a Tennessee resident who entered into a contract with

 Nationwide in Tennessee. In NC Farm Bureau’s view, Chapman’s Nationwide

 contract does not incorporate North Carolina’s FRA, and it need not, because it was
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 executed in Tennessee and North Carolina lacks any substantial connection to

 Chapman or the accident at issue. By extension, NC Farm Bureau contends that the

 terms of the Nationwide contract, which incorporate Tennessee’s definition of an

 underinsured motor vehicle, supply the definition to be applied in determining

 whether Chapman’s vehicle is underinsured. It is uncontroverted that under the

 relevant Tennessee statute, Tenn. Code § 56-7-1201(2), Chapman’s vehicle cannot be

 underinsured.

¶ 19 To be clear, NC Farm Bureau does not dispute that (1) Lunsford is seeking

 UIM coverage under her own insurance policy issued by NC Farm Bureau pursuant

 to a contract entered into in North Carolina, (2) all automobile accident insurance

 policies executed in North Carolina necessarily incorporate North Carolina’s FRA,

 and (3) this Court must apply North Carolina law when interpreting an insurance

 policy issued in North Carolina to a North Carolina insured. What NC Farm Bureau

 appears to be arguing is that North Carolina law requires us to look to the terms of

 Chapman’s Nationwide policy to ascertain whether the UIM coverage limit contained

 therein is an “applicable limit[ ] of underinsured motorist coverage for the vehicle

 involved in the accident and insured under the owner's policy.” N.C.G.S. § 20-

 279.21(b)(4) (emphasis added). As we understand it, NC Farm Bureau’s position can

 be articulated as follows: When an individual is injured by a driver’s tortious conduct,

 the driver’s UIM coverage limit is not an “applicable limit[ ] of underinsured motorist
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 coverage for the vehicle involved in the accident and insured under the owner's policy”

 which can be stacked with the injured party’s UIM coverage limit if, under the terms

 of the tortfeasor’s contract, the vehicle is not underinsured.

¶ 20 The essential question in this case is one of statutory interpretation: What did

 the General Assembly intend by using the phrase “applicable limits of underinsured

 motorist coverage for the vehicle involved in the accident and insured under the

 owner's policy” in N.C.G.S. § 20-279.21(b)(4)? “The primary objective of statutory

 interpretation is to ascertain and effectuate the intent of the legislature.” Lunsford

 v. Mills, 367 N.C. at 623. “The intent of the General Assembly may be found first from

 the plain language of the statute, then from the legislative history, the spirit of the

 act and what the act seeks to accomplish.” Lenox, Inc. v. Tolson, 353 N.C. 659, 664

 (2001) (cleaned up). Thus, we begin with the statutory language the General

 Assembly selected. “If the language of a statute is clear, the court must implement

 the statute according to the plain meaning of its terms so long as it is reasonable to

 do so.” Id. If the language is ambiguous or susceptible to multiple meanings, we turn

 to the other sources to identify the General Assembly’s intent.

¶ 21 Read in context, the General Assembly’s choice of the term “applicable” does

 not unambiguously answer the question of whether an injured party is or is not

 permitted to stack the tortfeasor’s UIM coverage limit under these circumstances.

 Black’s Law Dictionary defines applicable as “1. Capable of being applied; fit and
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 right to be applied. 2. (Of a rule, regulation, law, etc.) affecting or relating to a

 particular person, group, or situation; having direct relevance.” Black’s Law

 Dictionary (11th ed. 2019). Citing a similar dictionary definition, NC Farm Bureau

 argues that “[t]he UIM coverage of Chapman’s policy is not capable of being applied

 to Lunsford’s claim because the policy provisions, and the applicable Tennessee

 statutes, preclude her vehicle from being an underinsured vehicle for the UIM

 coverage of her policy.”

¶ 22 But this tautological proposition smuggles into the FRA the very premise NC

 Farm Bureau seeks to uncover in the statutory text. The provision does not state that

 “applicable” means “contained in a policy which would by its own terms define the

 tortfeasor’s vehicle as underinsured.” The text contains only the phrase “applicable

 limits.” The question before this Court is what meaning the General Assembly

 intended to communicate by including that phrase. NC Farm Bureau offers one

 possible answer, but that answer cannot be derived from the text alone, and we must

 not read into a statute “language that simply is not there.” Boseman v. Jarrell, 364

 N.C. 537, 554 (2010) (Hudson, J., dissenting); see also Borden v. United States, 141

 S.Ct. 1817, 1829 (2021) (“[W]e must construe the [statutory clause] as it is—without

 first inserting the word[s] that will (presto!) produce the dissent’s reading.”).

¶ 23 Benton and the other cases construing N.C.G.S. § 20–279.21(b)(4) to allow

 interpolicy stacking do not precisely define the phrase “applicable limits.” Still,
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 nothing in those cases supports NC Farm Bureau’s proposed construction. In

 Benton—which, we reiterate, NC Farm Bureau does not challenge—the Court of

 Appeals did not refer to the tortfeasor’s state of residence. The Court of Appeals

 explicitly rejected the tortfeasor’s insurer’s effort to define “underinsured motor

 vehicle” in accordance with the terms of the tortfeasor’s UIM policy, instead defining

 “underinsured motor vehicle” in accordance with the terms of the FRA. Benton, 195

 N.C. App. at 91–92 (“Because the [FRA] specifically defines ‘underinsured highway

 vehicle[,]’ . . . we turn to the Act and the cases interpreting it without regard to the

 definition of the term in the [tortfeasor’s] policy.”). In applying the definition supplied

 by the FRA, the Benton court without further explanation treated “the UIM coverage

 for the vehicle owned by the [tortfeasor] policy holder” as “applicable.” Id. at 97.

¶ 24 Even though Benton interpreted and applied N.C.G.S. § 20–279.21(b)(4), the

 decision contains no reference to the fact NC Farm Bureau and the dissent now claims

 was dispositive.2 Acknowledging this omission, NC Farm Bureau invites us to take

 2 Although Benton is not controlling, it is also not irrelevant, as the dissent suggests.

 In addition to not asking this Court to consider whether Benton was wrongly decided, NC
 Farm Bureau does not dispute that Benton was the governing law at the time it entered into
 an insurance contract with Lunsford. Thus, although we undoubtedly have the authority to
 displace Benton, doing so sua sponte would risk depriving the parties of the benefit of the
 bargain they struck. Further, we find it notable that the General Assembly has not acted in
 a way that evinces disagreement with Benton in the years since that case was decided. See,
 e.g., Brown v. Kindred Nursing Centers E., L.L.C., 364 N.C. 76, 83 (2010) (“[L]egislative
 acquiescence is especially persuasive on issues of statutory interpretation. When the
 legislature chooses not to amend a statutory provision that has received a specific
 interpretation, we assume lawmakers are satisfied with that interpretation.”).
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 “judicial notice” that the record in Benton indicates the tortfeasor’s insurance contract

 was executed in North Carolina. We decline the invitation to read Benton as turning

 on a fact which, upon close examination of the decision itself, appears to have been

 entirely extraneous to the court’s reasoning and ultimate holding. We are

 unconvinced by NC Farm Bureau’s effort to find in Benton a legal rule the court did

 not propound.

¶ 25 Instead, we understand the General Assembly’s use of the phrase “applicable

 limits” to refer to the UIM coverage limits contained within the insurance policy

 covering the tortfeasor’s vehicle, in a circumstance such as this one where the

 tortfeasor is the driver and the injured party is a passenger seeking to access the UIM

 coverage contained within his or her own policy incorporating North Carolina’s FRA.

 This interpretation is consistent with “the spirit of the [FRA] and what the [FRA]

 seeks to accomplish.” Lenox, 353 N.C. at 664 (cleaned up).

¶ 26 “The avowed purpose of the Financial Responsibility Act, of which N.C.G.S.

 § 20–279.21(b)(4) is a part, is to compensate the innocent victims of financially

 irresponsible motorists. It is a remedial statute to be liberally construed so that the

 beneficial purpose intended by its enactment may be accomplished.” Sutton v. Aetna

 Cas. & Sur. Co., 325 N.C. 259, 265 (1989) (citation omitted). Interpreting the

 ambiguous language contained in N.C.G.S. § 20–279.21(b)(4) to permit interpolicy

 stacking in this circumstance is “[i]n keeping with the purpose of the [FRA]” because
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 it allows injured North Carolina insureds to access the UIM coverage they paid for in

 a greater number of circumstances, reducing the likelihood that the costs of the

 damage caused by an underinsured tortfeasor will be borne by the insured alone.

 Benton, 195 N.C. App. at 92; see also Proctor v. North Carolina Farm Bureau Mut.

 Ins. Co., 324 N.C. 221, 225 (1989) (“[T]he statute's general purpose, which has not

 been changed, is best served when the statute is interpreted to provide the innocent

 victim with the fullest possible protection.”). The magnitude of North Carolina’s

 interest in protecting insureds in no way depends upon the state in which the

 tortfeasor executed his or her insurance contract. Nor is there any reason to look to

 another state’s law in defining the circumstances under which a North Carolina

 insured can access UIM coverage under his or her own insurance policy.

¶ 27 Further, NC Farm Bureau’s proposed interpretation does not reflect the way

 UIM coverage functions. UIM coverage becomes available to an insured from his or

 her own insurer when the damage caused by a tortfeasor exceeds the tortfeasor’s

 bodily injury liability coverage limits. The circumstances under which an insured will

 be able to claim UIM benefits are dictated by the terms and limits of the insured’s

 own contract with his or her insurer—and, by extension when the insurance contract

 is executed in North Carolina, the provisions of the FRA. See, e.g., Lunsford v. Mills,

 367 N.C. at 635 (2014) (Newby, J., concurring in part, dissenting in part) (“[A]n

 insured plaintiff's UIM recovery ‘is controlled contractually by the amount of the UIM
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 policy limits purchased and available to her.’ ”) (quoting Nikiper v. Motor Club of Am.

 Cos., 232 N.J. Super. 393, 398–99, certification denied, 117 N.J. 139 (1989)). It follows

 logically that the availability of UIM coverage to the insured—which hinges upon the

 threshold determination of whether a vehicle is underinsured—should be dictated by

 the terms of the bargain struck by the insured and the insurer, not by the terms of

 the bargain struck by the tortfeasor with his or her insurer. The availability of the

 UIM coverage Lunsford obtained should not be contingent on the tortfeasor

 fortuitously residing in a state whose elected officials share the North Carolina

 General Assembly’s concern for protecting injured insureds to the same extent.

¶ 28 If it were Chapman seeking to recover UIM benefits from Nationwide after an

 accident caused by Lunsford’s tortious driving, then the terms of the Nationwide

 contract would supply the definition of an “underinsured vehicle.”3 But the very

 reason an insurance contract includes a UIM coverage provision is to define the

 circumstances under which another vehicle (the one driven by the tortfeasor) is to be

 considered underinsured, for the purpose of establishing when the insurer’s

 obligation to disburse UIM benefits is triggered. The definition of an underinsured

 3 If this circumstance were presented to this Court, we would be called upon to
 interpret a contract executed in Tennessee incorporating Tennessee law, and NC Farm
 Bureau’s argument that the Full Faith and Credit Clause of Art IV. § 1 of the United States
 Constitution might be relevant. However, in this case, we are called upon to interpret a
 contract executed in North Carolina ordering the relations between two North Carolina
 residents which incorporated North Carolina law.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 motor vehicle that a North Carolina insured agrees to with his or her insurer does

 not incorporate or in any way depend upon the definition that would be operative if

 it were the tortfeasor who was seeking to recover under his or her own insurance

 policy.

¶ 29 It is not at all anomalous that a vehicle might be considered “underinsured” as

 that term is defined in a North Carolina contract incorporating the FRA, but not

 “underinsured” as that term is defined in an out-of-state contract incorporating that

 state’s insurance laws. Out of concern for the consequences of leaving North Carolina

 insureds vulnerable to financial ruin, or even simply being undercompensated, when

 they are harmed by irresponsible drivers, North Carolina has chosen to mandate that

 insurers make UIM coverage available in a circumstance where Tennessee has not.

 To give effect to the public policy considerations motivating the General Assembly’s

 legislative choice, and to honor the bargains struck by North Carolinians with their

 insurers in light of the North Carolina FRA, we must apply the definition of an

 “underinsured motor vehicle” chosen by the representatives of the people of North

 Carolina, not the one chosen by the representatives of the people of Tennessee. See

 Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000) (“[A]n automobile insurance

 contract should be interpreted and the rights and liabilities of the parties thereto

 determined in accordance with the laws of the state where the contract was

 entered.”). Therefore, we hold that the UIM coverage limit contained in Chapman’s
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Opinion of the Court

 Nationwide policy is an “applicable” limit within the meaning of N.C.G.S. § 20–

 279.21(b)(4).4

 III. Conclusion

¶ 30 When a passenger who has previously obtained UIM coverage pursuant to a

 contract executed in North Carolina is injured while travelling in a vehicle driven by

 someone else, and the injury results from that driver’s tortious conduct, the driver’s

 UIM coverage limits are “applicable” within the meaning of N.C.G.S. § 20-

 279.21(b)(4). Under these circumstances, the injured passenger is entitled to stack

 the driver’s UIM coverage limit with the limits contained in the passenger’s own

 policy for the purposes of determining whether the vehicle is an “underinsured motor

 vehicle” within the meaning of his or her own policy, which necessarily incorporates

 North Carolina’s FRA. In this case, after stacking the applicable Nationwide and NC

 Farm Bureau coverage limits, Chapman’s vehicle is “underinsured” as that term is

 defined in N.C.G.S. § 20-279.21(b)(4). Accordingly, we reverse the decision of the

 Court of Appeals and remand to the trial court for entry of an order granting a

 declaratory judgment in favor of Judy Lunsford.

 REVERSED.

 4 Because we reach this conclusion based upon our interpretation of Lunsford’s NC

 Farm Bureau insurance contract and the North Carolina FRA, we do not reach the question
 of whether the “conformity clause” in Chapman’s Nationwide insurance contract incorporates
 N.C.G.S. § 20-279.21(b)(4).
 Justice BARRINGER, dissenting.

¶ 31 This matter concerns the underinsured motorist bodily injury coverage in the

 insurance policy between North Carolina Farm Bureau Mutual Insurance Company,

 Inc. (Farm Bureau) and Judy Lunsford (Lunsford Policy). The material facts are

 undisputed and the law well-established. However, the majority assumes the role of

 the legislature in this matter and ignores our well-establish principles for the

 construction of insurance policies and the determination of what law applies to

 insurance policies. Applying the plain language of the statute enacted by the North

 Carolina legislature to a policy entered in North Carolina and Tennessee law to a

 policy entered in Tennessee, consistent with our precedent, clearly leads to affirming

 the trial court’s granting of judgment on the pleadings in Farm Bureau’s favor.

 Therefore, I respectfully dissent.1

 I. Background

¶ 32 Lunsford, while a resident of North Carolina, applied in North Carolina for and

 was issued in North Carolina the Lunsford Policy from Farm Bureau. The named

 insured for the Lunsford Policy was Lunsford, and the Lunsford Policy covered a 2016

 Toyota RAV4, which at all relevant times, was titled and registered to Lunsford in

 1 However, we agree with the majority and the parties to this appeal that the Court

 of Appeals erred in its application of the classes of insured. N.C. Farm Bureau Mut. Ins. Co.,
 Inc. v. Lunsford, 271 N.C. App. 234, 238–39 (2020). In this matter, it is undisputed that
 Lunsford was an insured under Chapman’s underinsured motorist coverage.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 North Carolina. The Lunsford Policy provided uninsured and underinsured motorist

 bodily injury coverage of $50,000 per person/$100,000 per accident.

¶ 33 While a passenger in a 2015 Chevrolet Silverado (Silverado) owned by and

 being driven by Levonda Chapman, a resident of Tennessee, Lunsford was seriously

 injured as a result of Chapman’s negligent driving. The accident occurred in

 Alabama. At the time of the accident, Chapman’s Silverado was covered by an

 automobile insurance policy between Nationwide Mutual Insurance Company

 (Nationwide) and Chapman (Chapman Policy), which provided bodily injury liability

 coverage of $50,000 per person/$100,000 per occurrence and underinsured motorist

 coverage of $50,000 per person/$100,000 per occurrence. The Chapman Policy was

 entered into in Tennessee. Nationwide offered the policy limit of the Chapman Policy

 bodily injury liability coverage, $50,000, to Lunsford.

¶ 34 The dispute between Lunsford and Farm Bureau concerns whether Chapman’s

 vehicle was an underinsured highway vehicle. As relevant to this appeal, the

 underinsured motorist coverage under the Lunsford Policy applies when “[Lunsford]

 is legally entitled to recover from the owner or operator of an underinsured [highway]

 vehicle because of bodily injury sustained by [her] and caused by the accident.”

 Recognizing that the definition of underinsured highway vehicle in the Lunsford

 Policy is narrower than the applicable subsection of the statute, N.C.G.S. § 20-

 279.21(b)(4), enacted by the North Carolina legislature, Farm Bureau conceded that

 N.C.G.S. § 20-279.21(b)(4) prevails over the narrower policy provision in the Lunsford
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 Policy. Subsection 20-279.21(b)(4) of the General Statutes of North Carolina defines

 underinsured highway vehicle as

 a highway vehicle with respect to the ownership,
 maintenance, or use of which, the sum of the limits of
 liability under all bodily injury liability bonds and
 insurance policies applicable at the time of the accident is
 less than the applicable limits of underinsured motorist
 coverage for the vehicle involved in the accident and
 insured under the owner’s policy. For purposes of an
 underinsured motorist claim asserted by a person injured
 in an accident where more than one person is injured, a
 highway vehicle will also be an “underinsured highway
 vehicle” if the total amount actually paid to that person
 under all bodily injury liability bonds and insurance
 policies applicable at the time of the accident is less than
 the applicable limits of underinsured motorist coverage for
 the vehicle involved in the accident and insured under the
 owner’s policy. Notwithstanding the immediately
 preceding sentence, a highway vehicle shall not be an
 “underinsured motor vehicle” for purposes of an
 underinsured motorist claim under an owner’s policy
 insuring that vehicle unless the owner’s policy insuring
 that vehicle provides underinsured motorist coverage with
 limits that are greater than that policy’s bodily injury
 liability limits.

 N.C.G.S. § 20-279.21(b)(4) (2019).

¶ 35 Farm Bureau also acknowledges that the Court of Appeals has construed the

 legislature’s use of the plural “limits” in the phrase “less than the applicable limits”

 to allow interpolicy stacking of applicable policies and does not challenge this holding

 in this matter. See Benton v. Hanford, 195 N.C. App. 88, 92–93 (2009); N.C. Farm

 Bureau Mut. Ins. Co. v. Bost, 126 N.C. App. 42, 50–51 (1997). Instead, Farm Bureau

 contends that the Chapman Policy is not an applicable policy. Specifically, the
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 Chapman Policy excludes from the definition of underinsured highway vehicle2 the

 Silverado—as both a vehicle insured under the liability coverage of the Chapman

 Policy and a vehicle operated by the insured, Chapman. This exclusion is consistent

 with the statutes enacted by the Tennessee legislature defining an uninsured

 highway vehicle for purposes of uninsured and underinsured motorist coverage. See

 Tenn. Code §§ 56-7-1201, -1202 (2016).

¶ 36 Lunsford does not dispute that the Chapman Policy is an insurance contract

 entered into in Tennessee by a Tennessee resident or the construction of the

 Chapman Policy under Tennessee law presented by Farm Bureau. Instead, Lunsford,

 relying on Benton, appears to contend that the definition of underinsured highway

 vehicle in the statute enacted by the North Carolina legislature applies to every

 policy, including the Chapman Policy. Thus, according to Lunsford, we ignore the

 plain language of the Chapman Policy and Tennessee law. Lunsford also argues

 Tennessee law does not apply because injury to a North Carolina resident is sufficient

 to establish a close connection with North Carolina and require the application of

 North Carolina law to the construction of the policy as in Collins & Aikman Corp. v.

 Hartford Acc. & Indemnity Co., 335 N.C. 91 (1993). Lastly, Lunsford raised in her

 reply before the Court of Appeals and her brief with this Court that a financial

 2 The Chapman Policy and the Tennessee statutes use the term “uninsured motor

 vehicle.” Because the distinction in the terms is not significant and to aid the reader, the
 term “underinsured highway vehicle” is also used when referring to the Chapman Policy and
 the Tennessee statutes.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 responsibility provision in the Chapman Policy dictates the application of North

 Carolina law in this matter.

 II. Construction of Insurance Policies

¶ 37 “This Court has long recognized its duty to construe and enforce insurance

 policies as written, without rewriting the contract or disregarding the express

 language used.” Fid. Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380 (1986).

 “However, when a statute is applicable to the terms of an insurance policy, the

 provisions of the statute become a part of the policy as if written into it.” Bray v. N.C.

 Farm Bureau Mut. Ins. Co., 341 N.C. 678, 682 (1995). Thus, the policy is construed

 in accordance with its written terms unless a binding statute, regulation, or order

 requires a different construction. Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C.

 341, 345 (1967). When unambiguous, the plain language of the policy controls, N.C.

 Farm Bureau Mut. Ins. Co. v. Martin, 376 N.C. 280, 286 (2020), or if superseded by a

 binding statute, the plain language of the statute controls, see generally Fid. Bank v.

 N.C. Dep’t of Revenue, 370 N.C. 10, 20 (2017).

 Where a policy defines a term, that definition is to be used.
 If no definition is given, non-technical words are to be given
 their meaning in ordinary speech, unless the context
 clearly indicates another meaning was intended. The
 various terms of the policy are to be harmoniously
 construed, and if possible, every word and every provision
 is to be given effect.

 Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505–06 (1978). This Court regularly

 looks to non-legal dictionaries to determine plain meaning for policies and statutes.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 See, e.g., Raleigh Hous. Auth. v. Winston, 376 N.C. 790, 2021-NCSC-16, ¶ 8 (2021);

 Martin, 376 N.C. at 287.

¶ 38 When a provision of an insurance policy is ambiguous, the provision will be

 given the meaning most favorable to the insured. Shelby Mut., 269 N.C. at 346.

 However, “[t]he terms of another contract between different parties cannot affect the

 proper construction of the provisions of an insurance policy.” Id. Rather,

 [t]he existence of the second contract, whether an
 insurance policy or otherwise, may or may not be an event
 which sets in operation or shuts off the liability of the
 insurance company under its own policy. Whether it does
 or does not have such effect, first requires the construction
 of the policy to determine what event will set in operation
 or shut off the company’s liability and, second, requires a
 construction of the other contract, or policy, to determine
 whether it constitutes such an event.

 Id.

¶ 39 In this matter, Farm Bureau has argued that the language written into the

 Lunsford Policy of N.C.G.S. § 20-279.21(b)(4)—“the applicable limits of underinsured

 motorist coverage”—is clear and unambiguous. Farm Bureau, relying on the

 definition from the American Heritage Dictionary of English Language, identifies

 that the plain meaning of “applicable” as “[c]apable of being applied; relevant or

 appropriate.” Applicable, The American Heritage Dictionary of the English Language

 (5th ed. 2020), https://ahdictionary.com/word/search.html?q=applicable. Lunsford

 has neither disputed that the language is unambiguous nor disputed or offered an

 alternative plain meaning of the term “applicable.”
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

¶ 40 The language is unambiguous. Thus, the statutory language and policy

 language of the Lunsford Policy provide that only underinsured motorist coverage

 capable of being applied are added together, i.e., stacked, for purposes of determining

 whether the threshold requirement of an underinsured highway vehicle is met under

 N.C.G.S. § 20-279.21(b)(4). Thus, in order for Lunsford to prevail, she would have to

 prove that the underinsured motorist coverage of the Chapman Policy is capable of

 being applied. See Martin, 376 N.C. at 285 (“The party seeking coverage under an

 insurance policy bears the burden ‘to allege and prove coverage.’ ” (quoting Brevard

 v. State Farm Mut. Auto. Ins. Co., 262 N.C. 458, 461 (1964)). In this case, which state’s

 law applies determines whether the underinsured motorist coverage of the Chapman

 Policy is capable of being applied.

¶ 41 Adopting Lunsford’s argument as done by the majority requires this Court to

 omit the word “applicable” and read the statute as:

 An “uninsured motor vehicle,” as described in subdivision
 (3) of this subsection, includes an “underinsured highway
 vehicle,” which means a highway vehicle with respect to
 the ownership, maintenance, or use of which, the sum of
 the limits of liability under all bodily injury liability bonds
 and insurance policies applicable at the time of the
 accident is less than the . . . limits of underinsured motorist
 coverage for the vehicle involved in the accident and
 insured under the owner’s policy.

 N.C.G.S. § 20-279.21(b)(4). This construction clearly disregards established canons of

 construction for statutes and insurance policies that, when possible, “every word and

 every provision is to be given effect,” Woods, 295 N.C. at 506.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

¶ 42 The majority’s construction also does not serve the avowed purpose of the

 Motor Vehicle Safety and Financial Responsibility Act (the Act) “to require financial

 responsibility of reckless, inefficient and irresponsible operators of motor vehicles

 involved in accidents.” Howell v. Travelers Indem. Co., 237 N.C. 227, 232 (1953). This

 case does not involve mandatory or compulsory motor vehicle liability insurance to

 protect against the financial irresponsibility of reckless drivers. Underinsured

 motorist coverage is optional for the insured. Comp. N.C.G.S. § 20-279.21(b)(4) with

 N.C.G.S. § 20-279.21(b)(2), (3); see also Hartford Underwriters Ins. Co. v. Becks, 123

 N.C. App. 489, 493–94 (1996) (rejecting defendants’ suggestion that underinsured

 motorist coverage “is ‘required’ or ‘deemed mandatory’ in all liability policies”). Our

 legislature also specifically provided in subsection 20-279.21(n) of the General

 Statutes of North Carolina that “[n]othing in this section shall be construed to provide

 greater amounts of uninsured or underinsured motorist coverage in a liability policy

 than the insured has purchased from the insurer under this section.” N.C.G.S. § 20-

 279.21(n). Ironically, the construction adopted by the majority also results in

 Chapman’s vehicle being deemed an underinsured highway vehicle when Chapman’s

 vehicle has the same liability coverage amounts as Lunsford’s policy amounts for

 underinsurance. The majority’s decision, thus, provides compensation for Lunsford

 exceeding her purchase as an insured and may have the effect of limiting the options

 available to residents in North Carolina for underinsured motorist coverage by

 increasing the costs of underinsured motorist coverage beyond the means of some.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 Thus, while the Act is remedial and to be liberally construed, Liberty Mut. Ins. Co. v.

 Pennington, 356 N.C. 571, 573–74 (2002), substituting the Court’s judgment and

 words for that of the legislature, especially when it may undermine the beneficial

 purposes of the Act, is not appropriate. See Howell, 237 N.C. at 232 (“Whether [the

 Act] ought to be brought more nearly into harmony with its declared object is a

 legislative and not a judicial matter.”).

 III. Choice of Law

¶ 43 This Court has held in accordance with the principles of lex loci contractus that

 an automobile insurance policy “should be interpreted and the rights and liabilities

 of the parties thereto determined in accordance with the laws of the state where the

 contract was entered even if the liability of the insured arose out of an accident in

 North Carolina.” Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000) (citing Roomy

 v. Allstate Ins. Co., 256 N.C. 318, 322 (1962)). However, this Court in Collins

 construed N.C.G.S. § 58-3-1 as recognizing an exception to the general rule of lex loci

 contractus “where a close connection exists between this State and the interests

 insured by an insurance policy.” Id. (citing Collins, 335 N.C. at 95). Collins

 acknowledged that when a policy was purchased in another state, owned by a resident

 of another state, and for a vehicle titled in another state, the policy is governed by the

 law of the state in which the policy was issued. Collins, 335 N.C. at 94 (1993) (citing

 Connor v. Insurance Co., 265 N.C. 188, 190 (1965); Roomy, 256 N.C. at 322). However,

 Collins involved an umbrella/excess liability insurance policy covering the wrongful
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 acts of agents of the insured with property predominately in North Carolina—ninety-

 seven trucks titled in North Carolina where the insured’s transportation division was

 located. Id. at 93–95. Given this close connection between North Carolina and the

 interests insured, the Court in Collins applied North Carolina law instead of the law

 of the state where the policy was issued. Id. at 95.

¶ 44 The Chapman Policy, however, did not insure any property in North Carolina.

 Also, as the accident did not occur in North Carolina, neither the Silverado,

 Chapman, nor Lunsford were in North Carolina at the time of the liability triggering

 event. Thus, Lunsford’s reliance on Collins for the proposition that North Carolina

 has a close connection to the interests insured under the Chapman Policy is

 misplaced.

¶ 45 The Court of Appeals decision in Benton, relied on by Lunsford, also does not

 support Lunsford’s position. Not only is this decision not binding on this Court, but it

 is not relevant to the dispute. Benton did not involve or address a policy entered

 outside of North Carolina. See 195 N.C. App. at 89–90.3

 3 The majority dismisses but does not deny that Benton did not involve or address a

 policy entered outside of North Carolina. While the Benton opinion does not expressly state
 that it addresses policies entered outside or inside of North Carolina, it is clear from the
 Benton opinion that the argument before this Court concerning the impact of an out-of-state
 policy was not decided by the Benton court. Thus, we neither ignore Farm Bureau’s argument
 nor precedent from this Court. We are also mindful that even when our rulings do not
 implicate the Full Faith and Credit Clause of Art IV. § 1 of the United States Constitution,
 we should not only consider our law where consideration for other sovereigns in this
 federation is due.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

¶ 46 Instead, this case is more analogous to Owens where this Court found no error

 in the trial court’s conclusion that no significant connections existed between the

 tortfeasor’s policy and North Carolina where the policy was issued to the tortfeasor

 in Florida, the insured vehicle involved in the accident had a Florida identification

 number and Florida license plate, the tortfeasor had a Florida license, the tortfeasor

 never had a North Carolina license, and the accident occurred in North Carolina. 351

 N.C. at 428–29. In Owens, the location at the time of the accident was casual, and all

 significant connections occurred in Florida. See id. at 429. As a result, this Court

 concluded the policy “must be construed in accordance with Florida law.” Id.

¶ 47 In this matter, it is undisputed that the policy was purchased in Tennessee,

 owned by a Tennessee resident, and covered a vehicle owned by a Tennessee resident.

 The accident also did not occur in North Carolina. Thus, all the significant

 connections occurred in Tennessee. The residency of the passenger at the time of the

 accident occurred by chance, just as the location of the accident occurred by chance

 in Owens. Thus, Tennessee law applies to the Chapman Policy. The residency of a

 passenger in North Carolina at the time of the accident by itself does not constitute

 a sufficient connection to warrant application of North Carolina law.4

 4 Lunsford’s final argument that the financial responsibility provision, located in the

 Auto Liability section of the Chapman Policy, mandates that North Carolina law applies to
 the Chapman Policy in this matter was not raised before the trial court and was presented
 for consideration for the first time on appeal in her reply before the Court of Appeals. This
 Court, however, “has long held that where a theory argued on appeal was not raised before
 the trial court, ‘the law does not permit parties to swap horses between courts in order to get
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

¶ 48 As it is undisputed that underinsured motorist coverage is not capable of being

 applied under Tennessee law in the facts of this case, there are no “limits of

 underinsured motorist coverage,” applicable under the Chapman Policy. See N.C.G.S.

 § 20-279.21(b)(4). Hence, the underinsured motorist coverage limits under the

 Chapman Policy of $50,000 per person/$100,000 per accident cannot be stacked, i.e.,

 added to the underinsured motorist coverage under the Lunsford Policy. Because the

 “sum of the limits of liability under all bodily injury liability bonds and insurance

 policies applicable at the time of the accident,” $50,000 per person/$100,000 per

 accident under the Chapman Policy, is not less than the sum of “the applicable limits

 of underinsured motorist coverage,” $50,000 per person/$100,000 per accident under

 the Lunsford Policy, there is no underinsured highway vehicle. N.C.G.S. § 20-

 279.21(b)(4). Absent an underinsured highway vehicle, Lunsford cannot satisfy the

 statutory and policy requirement for underinsured motorist coverage in North

 Carolina—that the insured person, Lunsford, be legally entitled to recover bodily

 damages from the owner or operator of an underinsured highway vehicle. See

 N.C.G.S. § 20-279.21(b)(3), (4).

 a better mount in the Supreme Court.’ ” State v. Sharpe, 344 N.C. 190, 194 (1996) (quoting
 Weil v. Herring, 207 N.C. 6, 10 (1934)). Because this is a new theory for the application of
 North Carolina law not raised before the trial court, it is not appropriate for this Court to
 address this argument.
 N.C. FARM BUREAU MUT. INS. CO. V. LUNSFORD

 2021-NCSC-83

 Barringer, J., dissenting

 IV. Conclusion

¶ 49 Applying the plain language of the statute dictates that the underinsured

 motorist coverage of the Chapman Policy must be capable of being applied to be

 stacked. As Tennessee law applies to the Chapman Policy and excludes underinsured

 motorist coverage in the facts of this case, the trial court’s judgment in favor of Farm

 Bureau should be affirmed.

 Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.